# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

NANCY C.,[1]

                                 Plaintiff,

       v.                                             6:23-CV-00088
                                                 (TJM/MJK)

COMMISSIONER OF SOCIAL SECURITY,

                                 Defendant.

_____

HOWARD D. OLINSKY, ESQ., for Plaintiff
FERGUS J. KAISER, Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying her application for benefits. Plaintiff did not consent to the jurisdiction of a Magistrate Judge (Dkt. No. 6), and this matter was therefore referred to me for Report and Recommendation by Senior United States District Court Judge Thomas J. McAvoy, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). Both parties filed briefs, which the court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Report-Recommendation will identify the plaintiff using only her first name and last initial.

## I.   PROCEDURAL HISTORY

On February 14, 2020, plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning September 9, 2013.  (Administrative Transcript ("T") 278, 285).  Plaintiff's application was denied initially on September 3, 2020 (T. 166-173), and upon reconsideration on January 20, 2021 (T. 179-189).  On July 29, 2021, Administrative Law Judge ("ALJ") Asad M. Ba-Yunus conducted a hearing during which plaintiff and vocational expert ("VE") Jeffrey Joy testified.  (T. 46-86).  On August 27, 2021, the ALJ issued an order denying plaintiff's claim.  (T. 11-22).  This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on November 30, 2022.  (T. 1-3).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standards

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

2

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that his impairment prevents him from performing

his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.*

*Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012). It must be "more than a scintilla" of evidence scattered throughout the

3

administrative record.  *Id.*  However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Id.  See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]").  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions."  *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

Plaintiff was thirty-four years old on the alleged disability onset date in 2013.  (T. 11, 48).  She had completed three years of community college and earned an associate degree in criminal justice.  (T. 54).  At the time of her administrative hearing in 2021, she lived alone in a second-floor apartment.  (T. 53).  She was single and did not have any children.  (*Id.*).

Among other prior employment, plaintiff had experience working as a machine operator and in maintenance. (T. 55-56). Plaintiff testified that she had worked in a full-time capacity until approximately 2013, at which time she felt that she could no longer maintain employment due to her mental health conditions. (T. 68-69). Specifically, she experienced intrusive thoughts, memory and concentration deficits, and difficulty interacting with others. (T. 69-70). She became "agoraphobic," and also tired easily. (T. 70). She described herself as "constant OCD," and not "very pleasant to be around." (*Id.*). Changes in her routine would "freak" her out. (*Id.*).

Plaintiff testified at the hearing that her depression was a "daily occurrence," and typically rendered her unable to function. (T. 70). When she was depressed, she would "sleep a lot," and "zone out on television." (*Id.*). In contrast, there were periods when she could not sleep at all. (*Id.*). She also experienced anxiety around people and in public, which often progressed into a panic attack. (T. 71-72). On one occasion, plaintiff did not leave her home for a three-week period because of her psychiatric symptoms. (T. 72). She engaged in self-injurious behavior by cutting herself. (T. 77).

Since 2013 plaintiff has been engaged in "some type" of mental health treatment, including inpatient and outpatient care. (T. 68-69). At the time of the hearing she was awaiting placement with a new counselor and was prescribed medication by her treating psychiatric nurse practitioner. (T. 74-75). She also received support services through an independent agency that helped with shopping, transportation, and paperwork. (T. 73).

The ALJ's decision provides a detailed statement of the medical and other evidence of record.  (T. 14-20).  Rather than reciting this evidence the court will discuss the relevant details below as necessary to address the issues raised by plaintiff.

## IV.    THE ALJ'S DECISION

The ALJ first determined at step one of the sequential evaluation that plaintiff met the insured status requirements of the Social Security Act through September 30, 2016, and had not engaged in substantial gainful activity since her alleged onset date of September 9, 2013.  (T. 14).  Next, the ALJ found that plaintiff has the following severe impairments: depression, anxiety/panic attacks, post-traumatic stress disorder ("PTSD"), and borderline personality disorder.  (*Id.*).  At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (*Id.*).

At step four, the ALJ found that plaintiff had the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following nonexertional limitations; she may only perform unskilled, simple, routine tasks; may have occasional interaction with coworkers and the general public; and can tolerate occasional changes to a routine work setting.

(T. 15).

In making the RFC determination, the ALJ stated that he considered all of plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]"  (T. 15).  The ALJ further noted that he fully considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. (*Id.*).  After considering plaintiff's statements regarding her symptoms, along with the

other evidence of record, the ALJ concluded that the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (T. 16).  The ALJ then determined that plaintiff was able to perform her past relevant work as an injection mold machine tender, because this work did not "require the performance of work-related activities precluded by [plaintiff's] residual functional capacity." (T. 21). Accordingly, the ALJ ruled that plaintiff was not disabled from September 9, 2013, through the date of the decision. (T. 22).

## V.    ISSUE IN CONTENTION

Plaintiff argues that remand is warranted because the ALJ erred by failing to adequately consider the medical opinion of Judy Schaffer, LCSW, and Stephanie Poplock, Ph.D. (Plaintiff's Brief ("Pl.'s Br.") at 13-18) (Dkt. No. 17).  Defendant contends that the Commissioner's determination should be affirmed because the ALJ properly considered Ms. Schaffer and Dr. Poplock's opinion, and the ALJ's RFC was thus supported by substantial evidence.  (Defendant's Brief ("Def.'s Br.") at 5-10) (Dkt. No. 19).  For the reasons stated below, this court agrees with plaintiff that the ALJ failed to sufficiently assess the persuasiveness of Ms. Schaffer and Dr. Poplock's medical opinion.  As a result, the ALJ's ultimate finding that plaintiff was not disabled was tainted. Therefore, this court recommends that the district court remand for further administrative proceedings by the Commissioner to properly evaluate the medical opinions and other record evidence, in order to reach a disability determination that is supported by substantial evidence.

## VI.    RFC/EVALUATING MEDICAL EVIDENCE

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588

(2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Evaluation of Medical Opinion Evidence

According to the applicable regulations,[2] the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)(2017).  The ALJ must "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).

The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.  An ALJ is specifically required to "explain how [he or she] considered the

---

[2] The regulations regarding the evaluation of medical evidence were amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

supportability and consistency factors" for a medical opinion.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).  With respect to "supportability," the new regulations

provide that "[t]he more relevant the objective medical evidence and supporting

explanations presented by a medical source are to support his or her medical opinion(s)

or prior administrative medical finding(s), the more persuasive the medical opinions or

prior administrative medical finding(s) will be."  *Id.* at §§ 404.1520c(c)(1),

416.920c(c)(1).  The regulations provide that with respect to "consistency," "[t]he more

consistent a medical opinion(s) or prior administrative medical finding(s) is with the

evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s) or prior administrative medical finding(s) will be."

*Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ must also consider, but need not explicitly discuss, the three remaining

factors in determining the persuasiveness of a medical source's opinion.  *Id.* at §§

404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more

medical opinions to be equally well supported and consistent with the record, but not

exactly the same, the ALJ must articulate how he or she considered those factors

contained in paragraphs (c)(3) through (c)(5).  *Id.* at §§ 404.1520c(b)(3),

416.920c(b)(3).

### B.    Analysis

Plaintiff argues that the ALJ improperly assessed Ms. Shaffer and Dr. Poplock's

joint medical opinion under the new regulations for evaluating medical evidence.  (Pl.'s

Br. at 13-18).  According to the administrative record, Dr. Poplock, a psychologist,

treated and/or supervised the treatment of plaintiff's mental health conditions since at

least 2015.  (*See* T. 483-90).  Ms. Shaffer is a licensed clinical social worker, with whom plaintiff also treated during the period of alleged disability.  On June 17, 2021, Ms. Schaffer and Dr. Poplock jointly completed a Mental Residual Functional Capacity Assessment.  (T. 1356-58).  In check-box form, these providers submitted their opinion of plaintiff's capacity to sustain various mental activities over a normal workday and workweek, on an ongoing basis.  (*Id.*).  Of relevance to this action, the providers specifically opined that plaintiff was "markedly limited" in her abilities to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and travel in unfamiliar places or use public transportation.  (*Id.*).

The ALJ considered Ms. Schaffer and Dr. Poplock's opinion in his written decision and concluded that it is "not persuasive," because it is "inconsistent with the [plaintiff's] overall treatment record." (T. 20).  He then stated:

> As noted above, the claimant reported that she was able to interact appropriately with others and function independently. She endorsed good daily living skills and an ability to take care of household responsibilities.  She indicated that she is able to manage her own finances.  She reported normal memory.  She endorsed an ability to concentrate but did indicate that she could be easily distracted at times.  The claimant reported that she could use public transportation adequately.

(T. 20).  This constituted the entirety of the ALJ's evaluation of Ms. Schaffer and Dr. Poplock's opinion.

In challenging the sufficiency of the ALJ's evaluation of Ms. Schaffer and Dr. Poplock's opinion, plaintiff first contends that the ALJ's assessment of the supportability factor was flawed and constituted remandable error. As previously discussed, "supportability, under the new regulations, has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support her opinion." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *16 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (internal quotations and citations omitted). "[T]he strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Rosario v. Comm'r of Soc. Sec.*, No. 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022) (quoting *Vellone v. Saul*, No. 1:20-CV-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1))).

The ALJ in this instance did not explicitly discuss what underlying evidence and explanations were 'presented' by plaintiff's treating providers to support their restrictive opinion. (T. 20). As a general rule, an ALJ's failure to explain the supportability and consistency of the medical opinions in the record is procedural error. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *see also Loucks v. Kijakazi*, No. 21-CV-1749, 2022 WL 2189293, at *2 (2d. Cir. June 17, 2022) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"). However, "if 'a searching review

12

of the record assures [the court] that the substance of the [regulation] was not traversed,' " the court may nevertheless affirm the Commissioner's decision. *Loucks*, 2022 WL 2189293, at \*2 (quoting *Estrella*, 925 F.3d at 96).

Here, Ms. Shaffer and Dr. Poplock declined to provide any explanation in support of their more restrictive opined limitations, despite the form's request that they explain their findings in "narrative form." (T. 1358). Nor did the providers point to, or attach, any objective medical evidence as support for their findings. In the absence of any such support, it follows that the explicit consideration of this factor by the ALJ would not have weighed heavily, if at all, toward a finding that the opinion should be considered more persuasive. Because any discussion of the supportability factor - i.e., the fact that this opinion lacked supporting explanations by its writers - would only have served to bolster the ALJ's decision to deny benefits, any procedural error by the ALJ in failing to explicitly address this factor is harmless. *See Nancy S. v. Kijakazi*, No. 3:22-CV-00100, 2023 WL 2628973, at \*5 (D. Conn. Mar. 24, 2023) (An error is harmless "where application of the correct legal principles to the record could lead [only to the same] conclusion.") (quoting *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alterations in original)).

The court cannot, however, draw the same conclusion with respect to the ALJ's deficient consideration of the consistency factor. Consistency "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2021 WL 363682, at \*10 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2022 WL 717612 (S.D.N.Y. Mar. 10,

2022). An ALJ is "expressly authorized - indeed, required - to consider whether [a physician's] opinion [is] consistent with the entire record." *DuBois v. Comm'r of Soc. Sec.*, No. 20-CV-8422, 2022 WL 845751, at *8 (S.D.N.Y. Mar. 21, 2022) (internal quotations omitted). Consideration of the entire record entails weighing "all of the evidence available." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

Here, the ALJ summarily stated that Ms. Schaffer and Dr. Poplock's opinion was "inconsistent with the [plaintiff's] overall treatment record." (T. 20). The ALJ did not, however, follow up with any discussion as to what specific treatment records or other medical evidence he found to be inconsistent with the providers' findings. At the outset, it is well settled that a conclusory statement regarding consistency, such as the one provided by the ALJ here, fails to satisfy the articulation requirements set forth in the regulations. *See Loucks*, 2022 WL 2189293, at *2 (single sentence generally stating that an opinion is inconsistent with the medical record does not satisfy the regulations); *Santiago v. Kijakazi*, No. 3:21-CV-01422, 2023 WL 2072564, at *13 (D. Conn. Feb. 17, 2023) ("a conclusory statement that the opinion is or is not consistent with the "evidence as a whole" does not provide the reviewing court with enough information to determine if the underlying reasoning was proper."); *Verna M. v. Kijakazi*, No. 3:21-CV-1590, 2022 WL 17251764, at *12 (D. Conn. Nov. 28, 2022) (same).

Instead of discussing the purportedly inconsistent treatment records upon which he relied in his evaluation of the opinion, the ALJ listed various activities that plaintiff "reported" she was able to perform. (T. 20). However, the ALJ failed to provide citations to any evidence of record suggesting that plaintiff maintained such capabilities, whether admitted or actual. Moreover, the court's review of the record

14

does not necessarily comport with the ALJ's blanket representation that plaintiff could perform the listed activities without issue.  As the ALJ himself noted in other portions of his decision, plaintiff had also represented in the past that she could not remember instructions, manage money, or take public transportation on her own due to her anxiety.  (T. 15-16, 18).  She admitted to having a hard time interacting with others, and difficulty leaving her house.  (T. 16).  The ALJ's failure to explain his assessment of plaintiff's varying abilities as set forth on the record, indeed his failure to provide any citations to the record at all in this respect, did not constitute an adequate basis for concluding that the providers' opinion was inconsistent with the record as a whole.

Furthermore, to the extent the ALJ relied on plaintiff's daily and regular activities to discount the restrictive limitations in Ms. Schaffer and Dr. Poplock's opinion, this analysis "is particularly problematic given that courts have consistently warned against placing the level of emphasis on daily activities that the ALJ appears to have done here." *Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *6 (N.D.N.Y. May 20, 2020) (collecting cases). In general, such activities form "a very weak basis" for discounting or rejecting a treating source opinion, and the ALJ's cursory analysis of plaintiff's activities fails to overcome that obstacle. *See Mallery v. Berryhill*, No. 3:17-CV-587 (DEP), 2018 WL 1033284, at *4 (N.D.N.Y. Feb. 22, 2018). If an ALJ is going to rely on such activities, he must explain how their performance undermined the more restrictive treating source opinions. *Miller v. Colvin*, 122 F. Supp. 3d 23, 29 (W.D.N.Y. 2015) (finding the ALJ erred by failing to explain how the plaintiff's limited activities of daily living translated into the ability to perform substantial gainful work in a typical competitive workplace environment, where treating psychiatrist opined that plaintiff

15

was seriously limited in his ability to follow work rules, relate to co-workers, use judgment, deal with work stresses, maintain attention and concentration, and interact appropriately with supervisors). The ALJ's decision here contains no such explanation.

The ALJ's failure to adequately explain his evaluation of the consistency factor as to Ms. Shaffer and Dr. Poplock's joint opinion was not harmless error, because the court cannot glean the ALJ's consideration of this factor from the ALJ's decision as a whole. *See Loucks*, 2022 WL 2189293, at *2 ("Despite the ALJ's procedural error, we could affirm if a searching review of the record assures us that the substance of the [regulation] was not traversed.") (internal quotation marks and citations omitted).

As a threshold matter, it is well settled that the importance of the longitudinal record is paramount in cases involving psychiatric impairments. "Mental health patients have good days and bad days; they 'may respond to different stressors that are not always active.' " *Pagan v. Saul*, No. 18-CV-7012, 2020 WL 2793023, at *6 (S.D.N.Y. May 29, 2020) (citation omitted). "Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Estrella*, 925 F.3d at 97 (citations omitted). Likewise, courts have recognized that in the context of psychiatric impairments, the longitudinal relationship between a mental health patient and [their] treating physician provides the physician with a rich and nuanced understanding of the patient's health . . . ." *Telesco v. Comm'r of Social Security*, 577 F. Supp.3d 336, 354 (S.D.N.Y. 2021) (quoting *Bodden v. Colvin*, No. 14-CV-8731, 2015 WL 8757129, at *9 (S.D.N.Y. Dec. 14, 2015)); *see also Flynn v.*

16

*Commissioner of Social Security Administration*, 729 F. App'x 119, 122 (2d Cir. 2018) (explaining that mental health impairments are "not susceptible to clear records such as x-rays or MRIs" and instead depend "almost exclusively" on "less discretely measurable factors, like what the patient says in consultations").

Here, plaintiff's longitudinal treatment record suggests that the symptoms stemming from her psychiatric impairments cycled through various levels of severity. Although the ALJ elsewhere in the decision discussed some of plaintiff's treatment notes evidencing her more debilitating symptoms, that discussion did not explain why the longitudinal treatment record was "inconsistent" with plaintiff's treating providers' opinion that her sustained concentration and persistence was "markedly limited." For example, while the treatment providers often noted that plaintiff exhibited "intact memory" and normal-to-fair concentration, there were other periods during which plaintiff was observed to be "distracted" (T. 483, 485) and "unengaged" (T. 1393), with delayed or diminished speech (T. 613, 881, 1412), inappropriate or poor judgment (T. 630, 642, 683, 881, 916, 921, 930, 1412), "poor" or "digressive" focus and concentration (T. 513, 521, 524, 630, 1308, 1383), poor impulse control (T. 483, 485), and "patchy" or "compromised" memory (T. 683, 930, 1412). She had a history of inpatient psychiatric care, and documented attempts and/or ideations of suicide and self-harm. (T. 483, 491, 571, 631, 645, 683, 1213). The ALJ even noted in his written decision that plaintiff's mental health treatment notes showed a variability in presentation (T. 17), but he failed to reconcile this variability with his consideration of the restrictive opinion by providers who had observed and treated plaintiff's fluctuating symptoms throughout the period of alleged disability. *See Jesse R. v. Comm'r of Soc.*

*Sec.*, No. 3:20-CV-1220 (CFH), 2022 WL 813918, at \*10 (N.D.N.Y. March 17, 2022) (noting that treating provider assessments are often more probative than consultative examination findings where plaintiff's symptoms are expected to wax and wane over time and would likely be aggravated if individual was exposed to the stress of "competitive, remunerative work on a consistent basis.").

Equally as crucial was the ALJ's failure to adequately consider the consistency of Ms. Schaffer and Dr. Poplock's opinion with the contemporaneous opinion of treating psychiatric nurse practitioner Kate Bolger, who similarly opined that plaintiff would have marked limitations in various capacities for work, including concentration and persistence. *See Ingrid T.G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-5651, 2022 WL 683034, at \*8 (S.D.N.Y. March 8, 2022) (emphasis in original) (". . . in finding the assessments of disabling pain and phobias unpersuasive, the ALJ was required to address and account for the fact that the treating providers were united in their belief that Plaintiff's symptom experience was plausible, pervasive, and preclusive of sustained work activity."); *see also Gary F. v. Comm'r of Soc. Sec.*, 2022 WL 16540354, at \*3 (W.D.N.Y. October 28, 2022) (finding ALJ erred when he "did not even acknowledge the substantial similarities between" two treating source opinions); *Kathleen K. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1160, 2022 WL 999686, at \*6 (W.D.N.Y. April 4, 2022) (finding remandable error where ALJ considered each psychiatric opinion in isolation and failed to adequately account for the consistency of the treating source opinions with each other); *Darla W. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1085 (TWD), 2021 WL 5903286, at \*9 (N.D.N.Y. Dec. 14, 2021) ("The consistency factor does not measure whether a medical opinion is consistent with a

18

single other medical opinion – it measures whether the medical opinion is consistent with all medical and nonmedical evidence in a claim.") (emphasis in the original).

The ALJ committed remandable error by failing to "meaningfully discuss" the consistency of the opinion from Ms. Shaffer and Dr. Poplock with other medical evidence of record. *See Thomas C.W. v. Kijakazi*, No. 8:21-CV-01198 (AMN), 2023 WL 2742294, at *10 (N.D.N.Y. March 31, 2023). The ALJ's lack of meaningful consideration of these treating sources' opinion also calls into question his evaluation of the persuasiveness of the non-examining consultant opinions from Dr. Lieber-Diaz and Dr. May, which pre-date the opinions of plaintiff's treating providers. *See Danette Z. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1273 (ATB), 2020 WL 6700310, at *8 (N.D.N.Y. November 13, 2020) (remanding, in part, due to non-examining consultant's inability to review later treating source opinion); *Shawn H. v. Comm'r of Soc. Sec.*, 2020 WL 3969879, at *8 (remanding where ALJ relied upon opinion of non-examining consultant who had no opportunity to review treating source opinions that described greater restrictions). These errors prevent this court from confidently concluding that the ALJ's evaluation of the persuasiveness of Ms. Schaffer and Dr. Poplock's opinion, and consequently the ultimate RFC determination, is supported by substantial evidence. Therefore, this court recommends remand for further administrative proceedings.[3]

**WHEREFORE**, based on the findings above, it is

---

[3] "When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). This court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and therefore the court cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**RECOMMENDED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 17) be **GRANTED**; and it is further

**RECOMMENDED**, that defendant's motion for judgment on the pleadings (Dkt. No. 19) be **DENIED**; and it is further

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED**, and this action be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report-Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:  January 25, 2024

Mitchell J. Katz
U.S. Magistrate Judge